UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES H. HUNTER,<br><br>                    Plaintiff,<br><br>       v.<br><br>SOTERA DEFENSE SOLUTIONS, INC., formerly known as GLOBAL DEFENSE & TECHNOLOGY SYSTEMS, INC., et al.,<br><br>                    Defendants. | NO:  CV-11-292-RMP<br><br>ORDER GRANTING LOCKTON'S AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT |

   Before the court are four motions: (1) a motion to dismiss by Defendant Gennaker Insurance Company Limited ("Gennaker"), ECF No. 32; (2) a motion to dismiss by Lockton Companies LLP ("Lockton"), ECF No. 36; (3) a motion for extension of time to answer or otherwise move against complaint by Defendants Global Integrated Securities (Middle East) FZE, formerly known as Global Strategies Group (Middle East) FZE, and Global Strategies Group (United Kingdom) Limited (collectively "Global"), ECF No. 57; and (4) a motion to strike

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO
DISMISS AND SETTING ASIDE DEFAULT ~ 1

by Defendant Global, ECF No. 75.  Oral argument was heard on the above matters on December 16, 2012.  The Court has reviewed all of the pending motions and the relevant filings and is fully informed.

## BACKGROUND

Plaintiff James Hunter was hired by Global Strategies Group (specifically his contract is with Global Strategies Group (Middle East) FZE) to work security in Baghdad.  During one of his deployments for Global, Mr. Hunter's flight itinerary was changed and rerouted through Abu Dhabi instead of Dubai.  Mr. Hunter was traveling with firearms as he provided his own weapons in performing his employment duties.  He alleges that after arriving in Abu Dhabi, he faced charges of entering Abu Dhabi with firearms and without a proper visa.  He had intended that the firearms travel in such a manner that he not assume possession of them until landing in Iraq.  However, due to the change in his flight itinerary while he was en route, he ended up entering Abu Dhabi with possession of his firearms.  As a result, Abu Dhabi personnel attempted to verify Mr. Hunter's story that he was a contractor en route to Iraq whose flight had been rerouted.  Mr. Hunter alleges that when Abu Dhabi personnel contacted Global to verify Mr. Hunter's story, Global would not verify that Mr. Hunter worked for them.  As a result, Mr. Hunter was imprisoned for thirty-seven days in Al Wathba Prison and suffered serious injuries.

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT ~ 2

Gennaker is a Bermuda insurer. Gennaker entered into a contract with Global to provide insurance to Global as part of Global's contractual obligation to provide insurance for Mr. Hunter. Lockton is an insurance broker that brokered the contract for insurance between Gennaker and Global. Lockton also received claims on behalf of Global for forwarding to Gennaker. Upon returning to the United States after his time in the Al Wathba Prison, Mr. Hunter made a claim on the Gennaker insurance policy. He made his claim through the broker, Lockton. Mr. Hunter's claim was denied.

Mr. Hunter brought an action against the Global defendants and the airlines in the Eastern District of New York. However, that court dismissed the Global defendants from the action for lack of personal jurisdiction. That case is still pending as to the airline defendants. Hunter also brought an action in the Eastern District of New York seeking a declaration that an arbitration provision contained in his employment contract with Global was unenforceable. The status of that action is unclear. The third action brought by Mr. Hunter was an arbitration pursuant to a provision in his employment contract. However, Mr. Hunter withdrew from that arbitration alleging that fees associated with bringing the arbitration reached the tens of thousands of dollars rendering the arbitration agreement unconscionable. Subsequent to withdrawing from the arbitration, Mr. Hunter filed the instant lawsuit.

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT ~ 3

1    Gennaker and Lockton both moved to dismiss Mr. Hunter's complaint

2  asserting a lack of personal jurisdiction, insufficient service of process, and failure

3  to state a claim.  ECF Nos. 32, 26.  Mr. Hunter did not reply to either Gennaker's

4  or Lockton's motions.

5    Global did not file either an answer or motion contesting Mr. Hunter's

6  complaint.  In light of Global's failure to answer or otherwise respond to the

7  complaint, Mr. Hunter filed a motion for entry of default.  ECF No. 49.  One week

8  after Mr. Hunter filed his motion for entry of default, Global moved the court for

9  an extension of time to answer or otherwise move against the complaint.  ECF No.

10  57.  However, almost two weeks after Global filed its motion for an extension of

11  time, the Clerk of the Court entered an order of default.  ECF No. 70.  Mr. Hunter

12  then filed an amended complaint.  ECF No. 74.  Two days later, Global moved to

13  strike the default.  ECF No. 75.

14  **DISCUSSION**

15  **Gennaker and Lockton's Motions to Dismiss**

16    While Gennaker and Lockton filed separate motions to dismiss, both

17  Gennaker and Lockton assert three bases for dismissal: (1) lack of personal

18  jurisdiction; (2) insufficient service of process; and (3) failure to state a claim.  As

19  the parties' issues overlap, the Court will address them together.  Finding that this

20

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO
DISMISS AND SETTING ASIDE DEFAULT ~ 4

Court lacks personal jurisdiction over both Defendants, the Court does not reach the service of process and failure to state a claim issues.

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Maverix Photo, Inc. v. Branch Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "Where . . . the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). A court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," but factual disputes are resolved in the plaintiff's favor. *Id.*

Where "no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Id.* Washington's long-arm statute provides for personal jurisdiction arising from the "commission of a tortious act" within the state or "contracting to insure any person, property, or risk located within [Washington] at the time of contracting." RCW 4.28.185(1)(b), (d).

Jurisdiction must meet constitutional requirements imposed by due process. "For a court to exercise personal jurisdiction over a nonresident defendant

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT ~ 5

consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Maverix Photo*, 647 F.3d at 1223 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))).

**General jurisdiction.**

"'A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum state.'" *Id.* (quoting *Goodyear Dunlop Tires operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). "For jurisdiction to exist, a defendant must engage in 'continuous and systematic general business contacts.'" *Id.* (quoting *Helicopteros Nationales de Columbia S.A. v. Hall*, 466 U.S. 408, 415 (1984).

Hunter as made no allegation, and there is no evidence in the record, to support the conclusion that either Gennaker or Lockton have had any direct business contacts with Washington. Accordingly, there is no argument in support of general personal jurisdiction over either company.

**Specific jurisdiction.**

Specific jurisdiction is analyzed under a three prong test:

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT ~ 6

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 1227-28 (quoting *Schwarzenegger*, 374 F.3d at 802). The Plaintiff bears the burden of establishing the first two prongs. *Id.* at 1228. If the Plaintiff satisfies the first two prongs, the burden shifts to the Defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp.*, 471 U.S. 462, 476-78 (1985)).

The first prong refers to both "purposeful direction" and "purposeful availment." *Id.* In a tort case, the Ninth Circuit generally utilizes a "purposeful direction" test. *Id.* The "purposeful availment" standard is typically used in contract cases. *Schwarzenegger*, 374 F.3d at 802.

Under the "purposeful direction" test, the court looks to "'whether a defendant "purposefully direct[s] his activities" at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred in the forum'" *Mavrix Photo*, 647 F.3d at 1228. This effects test requires that "the defendant allegedly must have (1)

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT ~ 7

committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*

Under the "purposeful availment" test, the court typically looks "to evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. "By taking such actions, a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

*Gennaker*

In the original complaint, the Plaintiff alleges personal jurisdiction over Gennaker in the following manner:

> This Court has jurisdiction over Gennaker Insurance Company Limited, a Bermuda insurer, because it issued a policy of personal accident insurance for the benefit of Mr. Hunter in fulfillment of Global's obligation under the Contract (defined hereinafter at paragraph 33) to provide personal accident insurance for Mr. Hunter. Gennaker is not admitted to offer and sell insurance in the State of Washington, but by having placed insurance for Mr. Hunter, a resident of the State of Washington, under a group general accident policy, as admitted by Global FZE's counsel Messrs. Clyde & Co. in a recent arbitration, Gennaker is subject to the personal long-arm jurisdiction of the State of Washington

ECF No. 1 at 17. In his first amended complaint, the Plaintiff alleges:

> This Court has long arm jurisdiction over Gennaker because it issued a group policy of personal accident insurance for the benefit of Mr. Hunter, a resident of Washington, and the Other Employees in WA, in

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT ~ 8

fulfillment of Global's obligation under their contracts to provide personal accident insurance for Mr. Hunter and the Other Employees. Gennaker, unlike the providers of group insurance policies throughout the United States, has not been licensed or registered to offer and sell insurance in the State of Washington, but by having placed group insurance for Mr. Hunter and the Other Employees in Washington as insureds and beneficiaries, residents of the State of Washington, under a group general accident policy, as admitted by Global FZE's counsel Messrs. Clyde & Co. in a recent arbitration, Gennaker is subject to the long-arm jurisdiction of the State of Washington for any tort arising under said policies.

ECF No. 74 at 19-20.

The contract for insurance is between Gennaker and Global. ECF No. 85 at 17.[1] The contract defines two parties: the "Insured" and "Insured Persons." ECF No. 85 at 17. The Insured is Global. ECF No. 85 at 17. The Insured Persons are

---

[1] While Mr. Hunter did not file a written response to Gennaker and Lockton's motions to dismiss, at oral argument Mr. Hunter objected to this Court's consideration of evidence outside of the four corners of Mr. Hunter's complaint. Mr. Hunter argued that in addressing a motion brought under Rule 12, a court was limited to the contents of the challenged complaint and that the court could not consider evidence outside of that complaint without converting the motion to one for summary judgment. However, Rule 12's evidence limitation is confined to motions brought pursuant to Rule 12(b)(6) and 12(c). Fed. R. Civ. P. 12(d). The appropriate evidentiary scheme for motions brought pursuant to Rule 12(b)(2) is recounted in the case law cited above.

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT ~ 9

employees of global, including Mr. Hunter during his time with Global. ECF No. 85 at 17. The "Operative Clause" makes clear that the effect of the policy is that Gennaker will "indemnify the Insured to the extent and in the manner detailed in this Insurance in respect of accident, illness, loss, damage, or mishap sustained by of affecting the Insured Persons during the Operative Term." ECF No. 85 at 21. In short, Gennaker pays Global for injuries to Global's covered employees. In this way, the policy does not appear to directly cover Mr. Hunter. Instead, it appears to be a third-party liability policy that covers Global to the degree that Global suffers liability to its employees.

Important to the issue of jurisdiction, Gennaker was not contracting with Mr. Hunter but with Global. In fact, according to the uncontested affidavit in support of Gennaker's motion, the contract for insurance was issued on or about February 1, 2008. In contrast, Mr. Hunter was hired by Global in June of 2008. There is no evidence in the record, nor any uncontroverted allegation in either complaint, that Gennaker ever "expressly aimed" any conduct at Washington state and no evidence or uncontroverted allegation exists showing that any events in this case occurred in Washington state. Accordingly, the Court concludes that it lacks personal jurisdiction over Defendant Gennaker.

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT ~ 10

***Lockton***

The Plaintiff alleges jurisdiction over Lockton in his original complaint in the following manner:

> Lockton Companies LLP, Lockton House, The St. Botolph Building, 138 Houndsditch, London EC3A 7AG, are Gennaker's disclosed brokers of record, and participated in the refusal to pay Mr. Hunter's claim and bad faith. Because Hunter was living in the State of Washington at the time the Lockton Companies LLP participated with Gennaker in their fraud and wrongful refusal to pay a claim, and bad faith, Lockton Companies LLP is subject to the Washington State long arm establishing personal jurisdiction in this State in connection with a tort committed in this State.

ECF No. 1 at 19-20. In the first amended complaint, the Plaintiff alleges:

> Lockton Companies LLP, Lockton House, The St. Botolph Building, 138 Houndsditch, London EC3A 7AG participated in the refusal to pay Mr. Hunter's claim and bad faith, as well as in the determination to pay Mr. Frank Young in Idaho. Lockton is a disclosed agent of Gennaker and therefore follows Gennaker as to jurisdiction and liability for joint acts. Because Hunter and the Othr [sic] Employees from Washington were living in the State of Washington at the time the Lockton Companies LLP participated with Gennaker in their civil conspiracy and wrongful refusal to pay a claim, and bad faith, Lockton Companies LLP is subject to the Washington State long arm establishing jurisdiction in this State in connection with numerous insurance-related torts committed by it in this State.

ECF No. 74 at 20.

According to the declaration filed in support of Lockton's motion, Lockton is a broker that assisted Global in procuring insurance from Gennaker. As broker, all claims under the Gennaker policy were to be made in writing to Lockton. ECF

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT ~ 11

No. 38 at 3.  Lockton did handle Mr. Hunter's claim.  ECF No. 38.  Lockton asserts that all communications received on behalf of Mr. Hunter came from Mr. Hunter's attorney, Mr. Stone, from his New York office, and that no business has been transacted in Washington.  ECF No. 38 at 4.  Mr. Hunter has not presented any evidence in opposition to this motion that establishes a prima facie showing that Lockton had any contacts with Washington State.  Accordingly, under either complaint, Mr. Hunter has failed to establish that this Court has personal jurisdiction over Lockton.

**Global's Motions for Extension of Time and to Strike**

Global has filed two motions seeking similar relief.  Global's first motion, ECF No. 57, was filed in response to Mr. Hunter's motion for entry of default, ECF No. 49, and sought to avoid the entry of default and an extension of time to file a response to Mr. Hunter's complaint.  After the Clerk of the Court entered default, Global filed a motion to strike the default, ECF No. 75.

In its two motions, Global argues that entry of default was inappropriate because (1) Mr. Hunter failed to comply with the notice requirements of LR 55.1; (2) default was inappropriate because Global has "otherwise defended;" and (3) Global was never properly served.  Global further argues for relief from the time limit on answering the original complaint asserting that (1) Mr. Hunter's filing of

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT ~ 12

an amended complaint moots the response timing issue; and (2) allowing Global to respond is in the interests of justice.

The Clerk of Court entered an order of default on November 17, 2011. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "[A] court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "As a general rule, default judgments[2] are disfavored; cases should be decided upon their merits whenever reasonably possible." *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009). Default judgments "are 'appropriate only in extreme circumstances.'" *TCI Group Life Ins. Plan v. Knoebbler*, 244 F.3d 691, 696 (9th Cir. 2001) (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).

Local Rule 55.1 requires a party seeking default to provide notice to opposing counsel of its intention to move for default at least fourteen days prior to the filing of the motion. LR 55.1(a)(1). The party seeking default must file an affidavit that shows, among other things, that notice has been given. LR 55.1(a)(2).

---

[2]While there is a distinction between a default and a default judgment, *See* Fed. R. Civ. P. (a)-(b), the policy of favoring results on the merits where possible counsels against both equally.

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT ~ 13

On the same day Mr. Hunter filed his motion for default, he filed an affidavit in support. ECF No. 50. However, that affidavit does not establish that Mr. Hunter gave notice fourteen days prior to the filing of his motion. *See* ECF No. 50. After Global filed its motion for extension of time, ECF No. 57, Mr. Hunter filed an additional affidavit establishing that notice of Mr. Hunter's intent to seek default was communicated to Global on October 25, 2011. ECF No. 69 at 2. However, the motion for default was filed only three days later on October 28, 2011. ECF No. 49. Therefore, Mr. Hunter failed to give notice fourteen days prior to filing the motion as required under LR 55.1(a)(1). Consequently, the default was entered in error, and the Court finds good cause to set aside the entry of default. Fed. R. Civ. P. 55(c).

After the order of default was entered by the Clerk, Mr. Hunter filed his first amended complaint.[3] ECF No. 74. The filing of an amended complaint

---

[3] Defendant's Gennaker and Lockton have moved to strike Mr. Hunter's amended complaint as filed without leave of the Court or with the agreement of the parties. ECF Nos. 83, 86 at 5-7. This Court lacks personal jurisdiction over Gennaker and Lockton regardless of which complaint is filed. Accordingly, their motion to strike the amended complaint will be denied as moot. Global has not opposed the filing of the amended complaint. *See* ECF No. 75 at 13. Accordingly, the Court will not strike the amended complaint sua sponte and will treat the

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT ~ 14

supersedes the initial complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990)). The original complaint is thereafter treated as though it does not exist. *Id.* (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)). Global has moved to dismiss the amended complaint. ECF No. 93. Accordingly, there is no current default and the case shall proceed in the usual course.

Accordingly, **IT IS HEREBY ORDERED:**

1. Gennaker's motion to dismiss, **ECF No. 32**, is **GRANTED**.

2. All claims against Gennaker are hereby **DISMISSED WITHOUT PREJUDICE** and without costs to either party.

3. Lockton's motion to dismiss, **ECF No. 36**, is **GRANTED**.

4. All claims against Lockton are hereby **DISMISSED WITHOUT PREJUDICE** and without costs to either party.

5. Gennaker's motion to strike, in which Lockton had joined, **ECF No. 83,** is **DENIED AS MOOT**.

6. Global's motion for extension of time, **ECF No. 57**, is **GRANTED IN PART AND DENIED IN PART**.

7. The Order of Default, **ECF No. 70**, is hereby **SET ASIDE**.

---

complaint as if it had been filed with the written agreement of the parties. Fed. R. Civ. P. 15(a)(2)

ORDER GRANTING LOCKTON AND GENNAKER'S MOTIONS TO DISMISS AND SETTING ASIDE DEFAULT ~ 15

8. In light of the fact that Global has filed a motion to dismiss Mr. Hunter's first amended complaint, the issue extending the time to respond is now moot.

9. As the default has been set aside, Global's motion to strike, **ECF No. 75**, is **DENIED AS MOOT**.

10. Global's motion to expedite, ECF No. 89, is **DENIED AS MOOT**.

11. There being good cause in light of the complexity of this case and the length of the first amended complaint, Global's motion for leave to file excess pages, **ECF No. 88**, is **GRANTED**.

**IT IS SO ORDERED**.

The District Court Executive is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 30th of January 2012.

                              *s/ Rosanna Malouf Peterson*
                         ROSANNA MALOUF PETERSON
                        Chief United States District Court Judge